1  WILLIAM BLUMENTHAL
   General Counsel

2
   JANICE L. CHARTER Colo. Bar No. 12750
3  DAVID M. NEWMAN Cal. Bar No. 54218
   THOMAS DAHDOUH N.Y. Bar No. 2222370
4  Federal Trade Commission
   901 Market Street, Suite 570
5  San Francisco, CA  94103
   Phone (415) 848-5100/ Fax (415) 848-5184
6  jcharter@ftc.gov
   dnewman@ftc.gov
7  tdahdouh@ftc.gov

8  Attorneys for Plaintiff
   Federal Trade Commission
9

10              **UNITED STATES DISTRICT COURT**
             **NORTHERN DISTRICT OF CALIFORNIA**
11                **SAN FRANCISCO DIVISION**

12

13  FEDERAL TRADE COMMISSION,

14          Plaintiff,

15              v.

16  NEXTCLICK MEDIA, LLC, a Delaware        4:08-cv-01718    VRW
    limited liability company, dba Stop
17  Smoking180.com,
    Stopsmokingresolution.com,              [Proposed]
18  Beautifulskin.com, and
    OnLineDirectProducts;                   **PRELIMINARY INJUNCTION**

19  NEXT INTERNET, LLC, a Delaware
20  limited liability company,

21  KENNETH CHAN, individually and as an
    officer of NEXTCLICK MEDIA, LLC, and
22  NEXT INTERNET, LLC,  and

23  ALBERT CHEN, individually and as an
    officer of NEXT CLICK MEDIA, LLC,
24

25          Defendants.

26

27      This matter comes before the Court on Plaintiff Federal Trade Commission's

28  Complaint for an injunction and other equitable relief and its application pursuant to Fed.

Preliminary Injunction

R. Civ. P. 65(b) for a temporary restraining order with asset freeze and other equitable relief and an Order to Show Cause Why a Preliminary Injunction Should Not Issue.  The Temporary Restraining Order ("TRO") with asset freeze, other equitable relief, and Order to Show Cause have been granted and served on Defendants, as have the Summons and Complaint.  The Court, having considered all pleadings, declarations, exhibits, memoranda of law concerning this matter, and other information from all parties, and now being fully advised in the premises, finds:

1.    This Court has jurisdiction of the subject matter of this case and jurisdiction over all the parties, and venue in this district is proper;

2.    There is good cause to believe that Defendants NextClick Media, LLC, dba StopSmoking180.com, StopSmokingResolution.com, BeautifulSkin.com, and OnLineDirectProducts; Next Internet, LLC; Kenneth Chan; and Albert Chen have engaged in and are likely to engage in acts that violate Sections 5(a) and 12 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a) and 52, Section 907(a) of Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), and that the Commission is therefore likely to prevail on the merits of this action;

3.    Specifically, the Court finds that the FTC is likely to prevail in showing that, in the course of advertising their smoking-cessation and skin-care products, Defendants unlawfully, and in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), have made the following misrepresentations: (a) that there is no cost for a trial of Defendants' products other than a shipping and handling fee; (b) and that consumers in the continuity program will be able to cancel at any time and cancel easily so as not to incur further monthly charges;

4.    The Court also finds that the FTC is likely to prevail in showing that, in the course of advertising their smoking-cessation and skin-care products, Defendants represented, expressly or by implication, that consumers will have a specified trial period in which to review Defendants' programs without incurring any charges other than

1  shipping and handling.  The Court further finds that the FTC is likely to prevail in

2  showing that, in the course of doing so, Defendants failed to disclose, or to disclose

3  adequately, the following material terms of and conditions of Defendants' offer: (a) that

4  the consumer's account will be charged for a one-month supply of product unless the

5  consumer takes affirmative action during the trial period to avoid the charge; (b) that

6  consumers who cancel during the trial period will have to pay to ship unused product

7  back to Defendants; (c) that consumers who cancel and return unused product during the

8  trial period will be billed a restocking fee; and (d) that consumers who do not cancel and

9  return unused product during the trial period will be charged for future shipments or

10  product.  The Court finds that the FTC is likely to prevail in showing that the failure of

11  Defendants to disclose, or to disclose adequately the material information described

12  above is a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C.

13  § 45(a);

14       5.    The Court also finds that the FTC is likely to prevail in showing that, in the

15  course of advertising and selling their smoking-cessation and skin-care products,

16  Defendants have caused charges to be submitted for payment to the credit and debit cards

17  of consumers (a) who cancelled or attempted to cancel their enrollment in Defendants'

18  continuity program; or (b) who were not adequately informed of the terms and conditions

19  of Defendants' continuity programs, and, therefore, did not provide express informed

20  consent for the charges.  The Court finds that the FTC is likely to prevail in showing that

21  this practice of causing charges to be submitted for payment without obtaining

22  consumers' express informed consent causes or is likely to cause substantial injury to

23  consumers that is not reasonably avoidable by consumers themselves and that is not

24  outweighed by countervailing benefits either to consumers or competition, and, thus, that

25  is an unfair act or practice in violation of Section 5(a) of the FTC Act;

26       6.    The Court also finds that the FTC is likely to prevail in showing that

27  Defendants violated Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section

28  205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).  Specifically, the Court finds that the

1  FTC is likely to prevail in showing that Defendants have debited consumers' bank

2  accounts on a recurring basis without obtaining a written authorization signed or

3  similarly authenticated from consumers for preauthorized electronic fund transfers from

4  the accounts;

5          7.      Furthermore, the Court finds that the FTC is likely to prevail in showing

6  that Defendants made representations about the superiority and effectiveness of

7  Nicocure, StopSmoking180®, and Zero Nicotine that constitute deceptive practices, and

8  the making of false advertisements, in or affecting commerce, in violation of Sections

9  5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52. Specifically, the Court finds that

10  the FTC is likely to prevail in showing that Defendants represented, expressly or by

11  implication, that (a) Nicocure, StopSmoking180®, and Zero Nicotine are more effective

12  than nicotine-based products for smoking cessation; (b) Nicocure and StopSmoking180®

13  have a 97 percent effectiveness rate for smoking cessation; and (c) Nicocure and

14  StopSmoking180® enable smokers to quit smoking permanently.  Furthermore, the Court

15  finds that the FTC is likely to prevail in showing that Defendants' representations set

16  forth above are false or were not substantiated at the time the representations were made,

17  and thus that the making of such representations violate Sections 5(a) and 12 of the FTC

18  Act;

19          8.      There is good cause to believe that immediate and irreparable harm will

20  result from Defendants' ongoing violations of the FTC Act through the present

21  advertising, packaging, labeling, and marketing of the products Nicocure,

22  StopSmoking180®, and ZeroNicotine unless Defendants are restrained and enjoined by

23  order of this Court;

24          9.      There is good cause to believe that immediate and irreparable harm will

25  result from Defendants' violations of Sections 5(a) and 12 of the FTC Act, 15 U.S.C.

26  §§ 45(a) and 52, Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b)

27  of Regulation E, 12 C.F.R. § 205.10(b), and that immediate and irreparable damage to

28  the Court's ability to grant effective final relief for consumers in the form of monetary

1  redress will occur from the sale, transfer, or other disposition or concealment by

2  Defendants of their assets unless Defendants are immediately restrained and enjoined by

3  this Order; there is thus good cause for an asset freeze and continuation of the

4  receivership over business Defendants NextClick Media, LLC, and Next Internet, LLC;

5      10.    Weighing the equities and considering the Commission's likelihood of

6  ultimate success, a Preliminary Injunction with asset freeze and other equitable relief is

7  in the public interest; and

8      11.    No security is required of any agency of the United States for issuance of a

9  preliminary injunction.  Fed. R. Civ. P. 65(c).

10                          **ORDER**

11                          **DEFINITIONS**

12      For the purposes of this Order, the following definitions shall apply:

13      1.    "Assets" means any legal or equitable interest in, right to, or claim to any

14  real or personal property including, but not limited to, chattels, goods, instruments,

15  equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries,

16  inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the

17  Uniform Commercial Code), contracts, shares of stock, and all cash, wherever located;

18      2.    "Billing Information" means any data that enables any person to access a

19  customer's account, such as a credit card, checking, savings, share or similar account,

20  utility bill, mortgage loan account, or debit card;

21      3.    "Charge" means any amount charged or debited to a consumer's credit

22  card, checking, savings, share or similar account, utility bill, telephone bill, mortgage

23  loan account, or debit card, or any similar form of collecting money from a consumer;

24      4.    "Clearly and conspicuously" means that:

25              a.  with regard to print advertisements, solicitations, or other promotional

26              material, the disclosure shall be in a type size and location sufficiently

27              noticeable for an ordinary consumer to read and comprehend it, in print that

28              contrasts with the background against which it appears; in multi-page

promotional materials, the disclosure shall appear on the cover or first page; and

b.  with regard to Internet advertisements, solicitations, or other promotional material, the disclosure shall be on the same electronic page and next to any advertised price (including free), without the use of pop-up windows or hyperlinks to other electronic pages to display material information and not at the end of a web page that requires consumers to scroll past unrelated information;

5.    "Competent and reliable scientific evidence" shall mean tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results;

6.    "Continuity Program" means any plan, arrangement, or system under which a consumer receives periodic shipments of products or the provision of services without prior notification by the seller before each shipment or service period, regardless of any trial or approval period allowing the consumer to return or be reimbursed for the product or service;

7.    "Defendant" means NextClick Media, LLC; Next Internet, LLC; Kenneth Chan; or Albert Chen, or any entity or name through which they do business including, but not limited to, StopSmoking180.com, StopSmoking Resolution.com, BeautifulSkin.com, and OnLineDirectProducts;

8.    "Document" is synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, into reasonably usable form through detection devices.  A draft or nonidentical copy is a separate document within the meaning of the term;

9.    "Financial institution" shall mean any bank, savings and loan institution, credit union, financial institution, brokerage house, escrow agent, money market or mutual fund, telephone or other common carrier, storage company, trustee or any other person, partnership, corporation, or other legal entity maintaining or having control of any records, accounts or other assets, owned directly or indirectly, of record or beneficially, by any Defendant, including accounts or other assets which any Defendant may control by virtue of being a signatory on said accounts;

10.    "Material" means likely to affect a person's choice of, or conduct regarding, goods or services;

11.    "Preauthorized Electronic Fund Transfer," as defined by the Electronic Fund Transfer Act, 15 U.S.C. § 1693a(9), means an electronic fund transfer authorized in advance to recur at substantially regular intervals;

12.    "Receivership Defendants" means NextClick Media, LLC, dba StopSmoking180.com, StopSmokingResolution.com, BeautifulSkin.com, and OnLineDirectProducts; and Next Internet, LLC; and

13.    The terms "and" and "or" in this Order shall be construed conjunctively or disjunctively as necessary, to make the applicable sentence or phrase inclusive rather than exclusive.

## CONDUCT PROHIBITIONS (Sections I through III)

## I.

## Business Activities Related to Continuity Programs

**IT IS HEREBY ORDERED** that, in connection with the advertising, promoting, offering for sale, or sale of any product or service, Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, affiliates, successors, and assigns, and all other persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, are hereby temporarily

1   restrained and enjoined from:

2        A.    Causing Billing Information to be submitted for payment, directly or

3   indirectly, for any product or service advertised, promoted, offered for sale, or sold as

4   part of an offer or agreement involving a Continuity Program, without obtaining the

5   express informed consent of consumers to be charged for any such product or service

6   using an account identified with sufficient specificity for consumers to understand what

7   account will be charged.  To evidence consumers' express informed consent, Defendants

8   must disclose clearly and conspicuously, before consumers provide any billing

9   information or pay any fee, all material terms and conditions of the offer or agreement,

10  and obtain consumers' affirmative agreement.  Material terms and conditions of an offer

11  or agreement involving a Continuity Program include, but are not limited to:

12        1.    the fact that the customer's account will be charged unless the
13              customer takes an affirmative action to avoid the Charge(s);

14        2.    the date(s) the Charge(s) will be submitted for payment;

15        3.    the specific steps the customer must take to avoid the Charge(s);

16        4.    all material terms and conditions of a guarantee, refund, or return
17              policy, or if Defendants have a policy of not making refunds or
18              accepting returns, a statement that this is Defendants' policy;

19        5.    the fact, if true, that periodic shipments of products or the periodic
20              provisions or the continuation of services will occur without further
21              action by consumers;

22        6.    a description of each good or the type of good to be included in each
23              shipment or a description of the services that will be performed or
24              continued;

25        7.    if the products are shipped or services provided on a periodic basis,
26              the approximate interval between each shipment or service period or
27              the number of shipments or service periods per year;

28        8.    the cost or range of costs for each shipment or service period,

1    including shipping and handling fees and restocking fees;

2    9.    the minimum number of purchases or minimum service period

3    required by Defendants, if any; and

4    10.    any limitations or restrictions concerning free trials that Defendants

5    offer to consumers in connection with a Continuity Program

6    including, but not limited to, the dates that a free trial period begins

7    and ends;

8    B.    Misrepresenting, in any manner, expressly or by implication:

9    1.    any fact material to a consumer's decision to purchase any product

10    or service sold or offered for sale by any Defendant; and

11    2.    any material terms and conditions of an offer or agreement

12    involving a Continuity Program including, but not limited to:

13    a.    the fact that the consumers' account(s) will be charged unless

14    they take affirmative action to avoid the Charge(s);

15    b.    the date(s) the Charge(s) will be submitted for payment;

16    c.    the specific steps consumers must take to avoid the Charge(s)

17    or to cancel the Continuity Program;

18    d.    that any product or service offered as part of an offer or

19    agreement involving a Continuity Program is not offered as

20    part of such an offer or agreement, or may be purchased

21    without entering into such an agreement;

22    e.    that consumers can "cancel anytime" or the period of time

23    within which consumers can cancel;

24    f.    that consumers have agreed to receive additional products or

25    services;

26    g.    that consumers are obligated to pay for subsequently shipped

27    products or services provided;

28    h.    that Defendants will honor consumers' requests to cancel

their participation in Defendants' programs;

  i. that consumers will be able to cancel their participation in Defendants' programs easily; and

  j. that Defendants will use consumers' credit or debit card account numbers only to charge for shipping and handling;

C. Failing to honor a request that Defendants receive to cancel any sale or transaction involving enrollment in a Continuity Program, and to provide a refund in accordance with Defendants' disclosed guarantee, refund, or return policy; and

D. If Defendants require any mechanism in order for a consumer to obtain a refund, including, but not limited to, a return authorization number, failing to employ technology and personnel sufficient to enable a consumer to obtain such mechanism within one business day of the consumer's first attempt to obtain such mechanism.

## II.

**Business Activities Prohibited Pursuant to the Electronic Fund Transfer Act**

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, affiliates, successors, and assigns, and all other persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, are hereby temporarily restrained and enjoined from:

A. In connection with any consumer who is enrolled into any Continuity Program subsequent to the date of this Order and who uses a debit card or other means of electronic funds transfer,

  1. failing to obtain written authorization for preauthorized Electronic Fund Transfers from a consumer's account before initiating any Preauthorized Electronic Fund Transfer, as required by Section 907(a) of EFTA, 15 U.S.C. § 1693e(a) and Section 205.10(b) of

Regulation E, 12 C.F.R. § 205.10(b), as more fully set out in Section
205.10 of the Federal Reserve Board's Official Staff Commentary to
Regulation E, 12 C.F.R. § 205, Supp. I; and

2.      failing to maintain procedures reasonably adapted to avoid an
unintentional failure to obtain written authorization for a
Preauthorized Electronic Fund Transfer, as required in Section
205.10 of the Federal Reserve Board's Official Staff Commentary to
Regulation E, 12 C.F.R. § 205, Supp. I; and

B.      In connection with any consumer who was enrolled into any Continuity
Program prior to the date of this Order and who indicated the use of a credit card when in
fact a debit card was used, if entities covered by this provision later find that the card
used is a debit card, failing to obtain written authorization for preauthorized Electronic
Fund transfers from the consumer's account as soon as reasonably possible, or ceasing to
debit the consumer's account, as required by Section 907(a) of EFTA, 15 U.S.C.
§ 1693e(a) and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), as more fully
set out in Section 205.10 of the Federal Reserve Board's Official Staff Commentary to
Regulation E, 12 C.F.R. § 205, Supp. I.

### III.

### Prohibited Representations About Smoking-Cessation Products

**IT IS FURTHER ORDERED** that, in connection with the manufacturing,
labeling, advertising, promotion, offering for sale, sale, or distribution of any smoking-
cessation product, Defendants, and their officers, agents, directors, servants, employees,
salespersons, independent contractors, attorneys, corporations, subsidiaries, affiliates,
successors, and assigns, and all other persons or entities in active concert or participation
with them, who receive actual notice of this Order by personal service or otherwise,
whether acting directly or through any trust, corporation, subsidiary, division, or other
device, or any of them, are hereby temporarily restrained and enjoined from making any
representation, in any manner, expressly or by implication, about the absolute or

1  comparative benefits, performance, efficacy, safety, or side effects of such product,

2  including, but not limited to, any representation that such product:

3      A.    Is more effective than nicotine patches, nicotine gum, and prescription

4  medications for smoking cessation; and

5      B.    Has a certain level of effectiveness;

6  unless the representation, including any such representation made through the use of

7  endorsements or trade names, is true, non-misleading, and, at the time it is made,

8  Defendants possess and rely upon competent and reliable scientific evidence that

9  substantiates such representation.

**IV.**

**ASSET FREEZE**

12      **IT IS FURTHER ORDERED** that Defendants and their officers, directors,

13  agents, servants, employees, salespersons, distributors, corporations, subsidiaries,

14  affiliates, successors, assigns, and those persons or entities in active concert or

15  participation with them who receive actual notice of this Order by personal service,

16  facsimile, or otherwise, are hereby temporarily restrained and enjoined from:

17      A.    Selling, liquidating, assigning, transferring, converting, loaning,

18  encumbering, pledging, concealing, dissipating, spending, withdrawing, or otherwise

19  disposing of any funds, real or personal property, or other assets or any interest therein,

20  wherever located, including any assets outside the territorial United States, that are:

21          1.    in the actual or constructive possession of any Defendant; or

22          2.    owned or controlled by, or held, in whole or in part for the benefit

23                of, or subject to access by, or belonging to, any Defendant; or

24          3.    in the actual or constructive possession of, or owned or controlled

25                by, or subject to access by, or belong to, any corporation,

26                partnership, trust, or other entity directly or indirectly under the

27                control of any Defendant;

28      B.    Opening or causing to be opened any safe deposit boxes titled in the name

1    of any Defendant, or subject to access by any Defendant;

2        C.    Incurring charges or cash advances on any credit or debit card issued in the

3    name, singly or jointly, of any Defendant, or any corporation, partnership, or other entity

4    directly or indirectly owned, managed, or controlled by any Defendant; and

5        D.    Failing to disclose to the Commission, immediately upon service of this

6    Order, information that fully identifies each asset of any Defendant, and each entity

7    holding such asset, including, but not limited to, the entity's name, address, and

8    telephone number, the number of the account, and the name under which the account is

9    held.

10        **Provided, however**, that the Asset Freeze provisions of this Section IV of the

11    Order shall not apply to employment income earned by Defendants Kenneth Chan and

12    Albert Chen after the date this Order is entered, where said employment is not in

13    violation of Sections I-III of this Order.

14                                        **V.**

15                    **RETENTION OF ASSETS BY THIRD PARTIES**

16        **IT IS FURTHER ORDERED** that, pending further order of this Court, any

17    bank, savings and loan, financial or brokerage institution, fund, escrow agent, trustee,

18    mail receipt facility, or other person or entity served with a copy of this Order, or who

19    otherwise has actual knowledge of this Order, that has possession, custody, or control of

20    any account, asset, safe deposit box, or document held on behalf of, or relating or

21    belonging to NextClick Media, LLC; Next Internet, LLC; Kenneth Chan; or Albert Chen

22    shall:

23        A.    Hold and retain within such entity's or person's control, and prohibit the

24    withdrawal, removal, assignment, transfer, pledge, hypothecation, encumbrance,

25    disbursement, dissipation, conversion, sale, liquidation, or other disposal of any funds,

26    documents, property, or other assets held by or under such entity's or person's control:

27            1.    on behalf of, or for the benefit of, any Defendant;

28            2.    in any account maintained in the name of, or subject to withdrawal

Preliminary Injunction                                              Page 13

1    by, any Defendant; or

2        3.    that are subject to access or use by, or under the signatory power of,

3            any Defendant;

4    B.    Deny access to any safe deposit box that is:

5        1.    titled in the name, individually or jointly, of any Defendant; or

6        2.    subject to access by any Defendant;

7        3.    **Provided, however**, that the Receiver may have access to any safe

8            deposit box titled in the name of NextClick Media, LLC, or Next

9            Internet, LLC, or subject to access by agents of NextClick Media,

10            LLC, or Next Internet, LLC;

11    C.    Provide to counsel for the Commission and to the Receiver, within three (3)

12    days, a statement setting forth:

13        1.    the identification of each account or asset titled in the name,

14            individually or jointly, or held on behalf of, or for the benefit of, any

15            Defendant, whether in whole or in part;

16        2.    the balance of each such account, or a description of the nature and

17            value of such asset;

18        3.    the identification of any safe deposit box that is either titled in the

19            name of, individually or jointly, or is otherwise subject to access or

20            control by, any Defendant, whether in whole or in part; and

21        4.    for any account, safe deposit box, or other asset that has been closed

22            or removed within one year from the date of entry of this Order, the

23            date closed or removed and the balance on said date; and

24    D.    Upon request by the Commission or by the Receiver, promptly provide the

25    Commission or the Receiver with copies of all records or other documentation pertaining

26    to such account, asset, or safe deposit box, including, but not limited to, originals or

27    copies of account applications, account statements, signature cards, checks, drafts,

28    deposit tickets, transfers to and from the accounts, all other debit and credit instruments

or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

The accounts subject to this Paragraph include existing assets and assets deposited after the effective date of this Order.  This Paragraph shall not prohibit transfers or withdrawals in accordance with any provision of this Order, authorized in writing by counsel for the Commission, by the Receiver, or by further order of the Court.

## VI.

## PRESERVATION OF RECORDS AND OTHER EVIDENCE

**IT IS FURTHER ORDERED** that Defendants, and their officers, directors, agents, servants, employees, salespersons, distributors, corporations, subsidiaries, affiliates, successors, assigns, and those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service, facsimile, or otherwise, are hereby enjoined from:

A.      Destroying, erasing, mutilating, concealing, altering, transferring or otherwise disposing of, in any manner, directly or indirectly, any smoking cessation product or any product involving a Continuity Program advertised, marketed, promoted, offered for sale, distributed, or sold by any Defendant;

B.      Destroying, erasing, mutilating, concealing, altering, transferring or otherwise disposing of, in any manner, directly or indirectly, contracts, agreements, customer files, customer lists, customer addresses and telephone numbers, correspondence, advertisements, brochures, sales material, training material, sales presentations, documents evidencing or referring to products or services sold by Defendants, data, computer tapes, disks, or other computerized records, books, written or printed records, handwritten notes, telephone logs, "verification" or "compliance" tapes or other audio or video tape recordings, receipt books, invoices, postal receipts, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, copies of federal, state or local business or personal income or property tax returns, and other documents or records of any kind, including electronically-stored materials, that relate to the business practices or business or personal finances of any

1  Defendant or other entity directly or indirectly under the control of any Defendant; and

2      C.     Failing to create and maintain books, records, and accounts which, in

3  reasonable detail, accurately, fairly, and completely reflect the incomes, assets,

4  disbursements, transactions, and use of monies by any Defendant or other entity directly

5  or indirectly under the control of any Defendant.

6                                    **VII.**

7                      **ACCOUNTING PROVISIONS**

8      **IT IS FURTHER ORDERED** that, within five (5) business days after service of

9  this Order,

10     A.     Except to the extent that such accounting has been fully completed and

11 delivered previously pursuant to the TRO, for any smoking-cessation product or service,

12 or for any product or service involving a Continuity Program, which Defendants, their

13 officers, directors, agents, servants, employees, salespersons, distributors, corporations,

14 subsidiaries, affiliates, successors, or assigns have advertised, marketed, promoted,

15 offered for sale, or sold, Defendants shall serve on counsel for the Commission a detailed

16 accounting, broken down by product or service, of:

17             1.     all gross revenues obtained from sales connected with any such

18                    promotions, products, or services from inception of sales through the

19                    date of entry of the TRO;

20             2.     all net profits obtained from sales connected with any such

21                    promotions, products, or services from inception of sales through the

22                    date of entry of the TRO; and

23             3.     the total number of sales connected with any such promotions,

24                    products, or services;

25     B.     Unless already provided pursuant to the TRO, Defendants shall prepare and

26 provide to the Commission complete and accurate individual and corporate financial

27 statements, in the form provided by the Commission, signed under penalty of perjury,and

28 copies of personal and corporate income tax returns (local, state, and federal) for the last

1    three (3) years;

2        C.    Unless already provided pursuant to the TRO, Defendants shall further

3    provide the Commission with a complete and accurate corporate financial statement in

4    the form provided by the Commission, signed under penalty of perjury, for any

5    corporation owned or controlled by any Defendant and not named in the caption;

6        D.    Unless already provided pursuant to the TRO, the Receivership Defendants

7    shall provide profit-and-loss statements from the date of incorporation or formation

8    through the date of this Order;

9        E.    Unless already provided pursuant to the TRO, Defendants shall further

10   provide the Commission with statements, verified under oath, of all transfers and

11   assignments of assets and property worth five thousand dollars ($5,000) or more by any

12   Defendant since January 1, 2006, that shall include the amount or value transferred or

13   assigned, the name and address of the transferee or assignee, the date of the transfer or

14   assignment, and the type and amount of consideration paid to any such Defendant; and

15       F.    Unless already provided pursuant to the TRO, each Defendant shall

16   provide the Commission with access to records and documents pertaining to assets of

17   such Defendant that are held by financial institutions outside the territory of the United

18   States, by signing a document entitled "Consent to Release of Financial Records," which

19   the Commission has provided.

**VIII.**

**REPATRIATION OF ASSETS**

22       **IT IS FURTHER ORDERED** that, within five (5) business days after service of

23   this Order, each Defendant shall:

24       A.    Repatriate to the United States all funds, documents, or assets in foreign

25   countries held, jointly or singly, either by, for the benefit of, or under the direct or

26   indirect control of such Defendant;

27       B.    On the same business day as any repatriation under Subparagraph A above,

28       1.    notify the Commission and the Receiver of the name and location of

1    the financial institution or other entity that is the recipient of such

2    funds, documents, or assets; and

3    2.    serve this Order on any such financial institution or other entity;

4    C.    Provide the Commission and the Receiver with a full accounting of all

5    funds, documents, and assets outside of the territory of the United States held, jointly or

6    singly, either by, for the benefit of, or under the direct or indirect control of such

7    Defendant; and

8    D.    Hold and retain all repatriated funds, documents, and assets and prevent

9    any transfer, disposition, or dissipation whatsoever of any such assets or funds.

**IX.**

**INTERFERENCE WITH REPATRIATION**

12    **IT IS FURTHER ORDERED** that Defendants are hereby temporarily restrained

13    and enjoined from taking any action, directly or indirectly, which may result in the

14    encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation

15    required by Section VIII of this Order, including but not limited to:

16    A.    Sending any statement, letter, fax, e-mail or wire transmission, telephoning

17    or engaging in any other act, directly or indirectly, that results in a determination by a

18    foreign trustee or other entity that a "duress" event has occurred under the terms of a

19    foreign trust agreement, until such time that all assets have been fully repatriated

20    pursuant to Section VIII of this Order; and

21    B.    Notifying, or causing the notification of, any trustee, protector or other

22    agent of any foreign trust or other related entities of either the existence of this Order, or

23    of the fact that repatriation is required pursuant to a Court Order, until such time that all

24    assets have been fully repatriated pursuant to Section VIII of this Order.

**X.**

**NOTIFICATION OF BUSINESS ACTIVITIES**

27    **IT IS FURTHER ORDERED** that Defendants Kenneth Chan and Albert Chen

28    are hereby restrained and enjoined from creating, operating, or exercising any control

over any business entity, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing counsel for the Commission with a written statement disclosing the following: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

**IT IS FURTHER ORDERED** that Defendants Kenneth Chan and Albert Chen shall notify the Commission at least seven (7) days prior to any affiliation with any new or previously inactive business or employment. Each notice shall include the applicable Defendant's new business address and a statement of the nature of the new business or employment and of his duties and responsibilities in connection with that business or employment.

## XI.

## <u>NON-DISCLOSURE OF CONSUMER LISTS</u>

**IT IS FURTHER ORDERED** that Defendants are temporarily restrained and enjoined from selling, renting, leasing, transferring, or otherwise disclosing the name, date of birth, address, telephone number, credit card number, bank account number, e-mail address, or other identifying information of any person who submitted such information to Defendants at any time prior to entry of this Order, **provided, however**, that Defendants may disclose such identifying information to a law enforcement agency, or as required by any law, regulation, or court order.

## XII.

## <u>APPOINTMENT OF RECEIVER</u>

**IT IS FURTHER ORDERED** that _____ is hereby appointed Receiver, with the full power of an equity receiver, for the Receivership Defendants. The Receiver shall be the agent of this Court and solely the agent of this Court in acting as receiver under this Order. The Receiver shall be accountable directly to this Court. As required by Local Rule 66-5, the Receiver shall file a report with the

Court within 30 days of appointment.  Thereafter, the Receiver shall file a report every ninety (90) days updating the Court on the status of Receivership Defendants, the fulfillment of the Receiver's duties as set forth in this Order, and any other relevant issues whose inclusion the Receiver deems appropriate.  The Receiver shall comply with all Local Rules of this Court governing receivers.  The Receiver has the directions and authority to:

      A.     Assume full control of the Receivership Defendants and all power of the Receivership Defendants' directors, officers, and managers, and remove Defendants Kenneth Chan and Albert Chen, and any other officer, independent contractor, employee, attorney, or agent of the Receivership Defendants, from control or management of, or participation in, the affairs of the Receivership Defendants as the Receiver deems necessary and advisable;

      B.     Take immediate and exclusive custody, control, and possession of all properties, premises, assets, and documents of, in the possession of, or under the control of, either Receivership Defendant, wherever situated, including, but not limited, to 667 Folsom Street in San Francisco, CA, 94107; 880 Harrison Street in San Francisco, CA, 94107; 2525 East Charleston Road, Suite 101, and 2513 East Charleston Road, Suite 102, in Mountain View, CA, 94043; and PO Box 390351 in Mountain View, CA, 94039. The Receiver shall have full power to divert mail and to sue for, collect, receive, and take possession of:

            1.     all assets and documents of the Receivership Defendants and members of the public whose interests are now held by or are under the direction, possession, custody, or control of either Receivership Defendant; and

            2.     all sums of money now or hereafter due and owing to either Receivership Defendant.  Provided, however, that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer was a victim of the unfair or deceptive acts or

1      practices alleged in the Complaint in this matter;

2      C.      Perform all acts necessary to conserve, hold, manage, and preserve the

3      value of all such assets;

4      D.      Hold, preserve, and administer the business of the Receivership Defendants

5      until further order of this Court, with full authority to perform all acts necessary or

6      incidental thereto, including retaining, hiring, or dismissing any employees, independent

7      contractors, or agents;

8      E.      Take such actions and enter into such agreements in connection with the

9      administration of the Receivership Defendants as the Receiver deems necessary;

10     F.      Choose, engage, and employ attorneys, accountants, appraisers, and other

11     independent contractors, and technical specialists, as the Receiver deems advisable or

12     necessary in the performance of duties and responsibilities under the authority granted by

13     this Order;

14     G.      Make payments and disbursements from the receivership estate that the

15     Receiver deems necessary to secure or preserve the Receivership Defendants' assets or to

16     carry out the Receiver's mandate under this Order;

17     H.      Institute, prosecute and defend, compromise, intervene in, or become party

18     to such actions or proceedings in state, federal, or foreign court that the Receiver deems

19     necessary to collect, recover, protect, maintain, or preserve the value of the assets of the

20     Receivership Defendants or to carry out the Receiver's mandate under this Order;

21     I.      Defend, compromise, or otherwise dispose of any actions or proceedings

22     instituted against the Receiver in his role as Receiver or the Receivership Defendants,

23     whether now pending or hereinafter filed, that the Receiver deems necessary to preserve

24     the assets of the Receivership Defendants or to carry out the Receiver's mandate under

25     this order;

26     J.      Take all steps the Receiver deems necessary to secure the business

27     premises of the Receivership Defendants, including, but not limited to:

28     1.      completing a written inventory of all receivership assets;

2. obtaining pertinent information from all employees and other agents of the Receivership Defendants, such as the name, home address, social security number, job description, method of compensation, accrued and unpaid commission and compensation of each employee or agent;

3. changing the premises' locks and disconnecting any computer modems or other means of access to the computer systems or to documents maintained at that location; or

4. requiring any persons present on the premises to leave the premises, to provide the Receiver with proof of identification, and to demonstrate to the Receiver's satisfaction that such persons are not removing from the premises any of the Receivership Defendants' documents or assets;

K. Obtain, by presentation of this Order, tangible and intangible assets as well as information in the custody or control of any person, firm, or entity sufficient to identify the accounts, employees, properties, or other assets or obligations of the Receivership Defendants;

L. Issue subpoenas to obtain documents pertaining to the receivership, conduct discovery in this action on behalf of the receivership estate, attend any deposition noticed by any party to this action, and ask any question of any deponent which, in the Receiver's opinion, is pertinent to the receivership estate;

M. Allow representatives of the Commission and the Defendants reasonable access to inspect the Receivership Defendants' books, records, accounts, premises, and other property, wherever located;

N. Determine and implement the manner in which the Receivership Defendants will comply with, and prevent violations of, this Order and all other applicable laws, including, but not limited to, revising sales materials and implementing monitoring procedures;

1    O.    Continue and conduct the business of the Receivership Defendants in such

2    manner, to such extent, and for such duration as the Receiver may in good faith deem to

3    be necessary or appropriate to operate the business profitably and lawfully, if at all;

4    provided, however, that the continuation and conduct of the business shall be conditioned

5    upon the Receiver's good faith determination that the businesses can be lawfully

6    operated at a profit using the assets of the receivership estate; and

7    P.    Open one or more bank accounts as designated depositories for funds of the

8    Receivership Defendants.  The Receiver shall deposit all funds of the Receivership

9    Defendants in such designated accounts and shall make all payments and disbursements

10    from the receivership estate from such accounts.

11                                          **XIII.**

12                          **COMPENSATION FOR RECEIVER**

13    **IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the

14    Receiver shall be entitled to reasonable compensation for the services they render to the

15    receivership estate and for the cost of actual out-of-pocket expenses incurred by them,

16    from the assets now held by, in the possession or control of, or which may be received by

17    the Receivership Defendants.  The Receiver shall file with the Court and serve on the

18    parties periodic requests for payment, outlining the services rendered and the related fees

19    and expenses, with the first such request filed no more than sixty (60) days after the entry

20    of this Order.  The Receiver shall not increase the hourly rates used as the bases for such

21    fee applications without prior approval of the Court.

22                                          **XIV.**

23                              **RECEIVER'S BOND**

24    **IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of this

25    Court a bond in the sum of _____ with sureties to be approved by

26    the Court, conditioned that the Receiver will well and truly perform the duties of the

27    office and abide by and perform all acts the Court directs.

28

# XV.

## DELIVERY OF RECEIVERSHIP PROPERTY

**IT IS FURTHER ORDERED** that Defendants and any other person or entity served with a copy of this Order, shall immediately deliver or transfer possession, custody, and control of the following to the Receiver:

A.    All assets of the Receivership Defendants;

B.    All documents and records relating to the assets of the Receivership Defendants, including, but not limited to, financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), distributor lists, and title documents;

C.    All keys, lock combinations, passwords, or codes required to open, gain access to, or secure any of the Receivership Defendants' assets or documents, including, but not limited to, access to their business premises, computer systems or files, telephone or other communication systems, and bank accounts; and

D.    Information identifying the assets, employees, or obligations of the Receivership Defendants.

**IT IS FURTHER ORDERED** that in the event any person or entity fails to deliver or transfer any asset or otherwise fails to comply with any provision of this Paragraph, the Receiver may file *ex parte* an Affidavit of Non-Compliance regarding the failure.  Upon the filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver.  The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county (pursuant to Fed. R. Civ. P. 4(c)(1)), or any other federal or state law enforcement officer, to seize the asset, document, or other thing and to deliver it to the Receiver.

# XVI.

## COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that all Defendants, and their agents, servants,

1  employees, and attorneys, and all persons or entities directly or indirectly under the

2  control of any of them, and all other persons or entities in active concert or participation

3  with any of them who receive actual notice of this Order by personal service or

4  otherwise, and each such person, shall cooperate fully with and assist the Receiver.  Such

5  cooperation and assistance shall include, but not be limited to, providing any information

6  to the Receiver that the Receiver deems necessary to exercise the authority and discharge

7  the responsibilities of the Receiver under this Order; providing any password required to

8  access any computer or electronic files in any medium; or advising all persons who owe

9  money to any of the Receivership Defendants (other than customers) that all debts should

10  be paid directly to the Receiver.  All Defendants are hereby restrained and enjoined from

11  directly or indirectly:

12       A.     Transacting any of the business of the Receivership Defendants, or

13  transacting business under the names NextClick Media, LLC; Next Internet, LLC; any of

14  their dba entities; or any substantially similar names;

15       B.     Destroying, secreting, defacing, transferring, or otherwise altering or

16  disposing of any documents of either of the Receivership Defendants, including, but not

17  limited to, books, records, accounts, or any other papers of any kind or nature;

18       C.     Transferring, receiving, altering, selling, encumbering, pledging, assigning,

19  liquidating, or otherwise disposing of any assets owned, controlled, or in the possession

20  or custody of, or in which an interest is held or claimed by, either of the Receivership

21  Defendants, or the Receiver;

22       D.     Excusing debts owed to either Receivership Defendant;

23       E.     Failing to notify the Receiver of any asset, including accounts, of either

24  Receivership Defendant held in any name other than the name of either Receivership

25  Defendant, or by any person or entity other than the Receivership Defendants, or failing

26  to provide any assistance or information requested by the Receiver in connection with

27  obtaining possession, custody, or control of such assets; or

28       F.     Doing any act or refraining from any act whatsoever to interfere with the

1  Receiver's taking custody, control, possession, or management of the assets or

2  documents subject to this receivership; or to harass or interfere with the Receiver in any

3  way; or to interfere in any manner with the exclusive jurisdiction of this Court over the

4  assets or documents of either Receivership Defendant; or to refuse to cooperate with the

5  Receiver or the Receiver's duly authorized agents in the exercise of their duties or

6  authority under any order of this Court.

7                                  **XVII.**

8                **TRANSFER OF FUNDS TO THE RECEIVER**

9        **IT IS FURTHER ORDERED** that, upon service of a copy of this Order, all

10  banks, broker-dealers, savings and loan associations, escrow agents, title companies,

11  commodity trading companies, and other financial institutions shall cooperate with all

12  reasonable requests of the Receiver relating to implementation of this Order, including

13  transferring funds at his direction and producing records related to the assets of either of

14  the Receivership Defendants.

15                                  **XVIII.**

16                        **STAY OF ACTIONS**

17        **IT IS FURTHER ORDERED** that, except by leave of this Court and except for

18  any federal, state, or local law enforcement or regulatory authority action against the

19  Receivership Defendants, during the pendency of the receivership, Defendants and all

20  other persons seeking to establish or enforce any claim, right, or interest against or on

21  behalf of either Receivership Defendant, be and hereby are stayed from:

22        A.    Commencing, prosecuting, continuing, or enforcing any suit against either

23  Receivership Defendant, except that such actions may be filed to toll any applicable

24  statute of limitations;

25        B.    Commencing, prosecuting, continuing, or enforcing any suit or proceeding

26  in the name of or on behalf of either Receivership Defendant;

27        C.    Accelerating the due date of either Receivership Defendant's obligation or

28  claimed obligation; enforcing any lien upon, or taking, attempting to take, or retaining

possession of either Receivership Defendant's assets; attempting to foreclose, forfeit, alter, or terminate any interests of either Receivership Defendant, whether such acts are part of a judicial proceeding or otherwise;

D.    Using self-help or executing or issuing any process to impound, take possession of, interfere with, create, or enforce a lien upon any asset owned by or in the possession of either Receivership Defendant, the Receiver, or any agent appointed by the Receiver; and

E.    Committing any act to interfere with the Receiver's taking control, possession, or management of the Receivership Defendants and their assets and documents, or to interfere with the exclusive jurisdiction of this Court over the property and assets of the Receivership Defendants.

**Provided** that this Paragraph does not stay any suit pending in a State court, upon motion and a finding by the Court that the moving party will suffer substantial injury if it is not permitted to proceed.

## XIX.

## <u>LIMITED EXPEDITED DISCOVERY</u>

**IT IS FURTHER ORDERED** that the Commission is granted leave at any time after service of this Order to take the deposition of and demand the production of documents from any person or entity for the purpose of discovering the location of a Defendant or the nature, location, status, and extent of assets of any Defendant or their affiliates. Two (2) business days' notice shall be deemed sufficient for any such production of documents or the taking of a deposition from any Defendant, and three (3) business days' notice shall be deemed sufficient for any such production of documents or the taking of a deposition from any other person or entity including, but not limited to, any financial institution. The production of documents submitted pursuant to this provision shall not in any way waive the Commission's rights to seek the production of additional documents. The limitations and conditions set forth in Fed. R. Civ. P. 30(a)(2)(B) regarding subsequent depositions of an individual shall not apply to

depositions taken pursuant to this Section XIX, nor shall any depositions taken pursuant to this Section XIX count towards the ten-deposition limit set forth in Fed. R. Civ. P. 30(a)(2)(A).

## XX.

## RIGHT OF ACCESS

**IT IS FURTHER ORDERED** that the Receiver shall subsequently allow the Commission's representatives, and the representatives of the Receivership Defendants and of Defendants Kenneth Chan and Albert Chen, and Defendants Kenneth Chan and Albert Chen themselves reasonable access to the business premises of the Receivership Defendants for the purpose of inspecting and copying any and all books, records, accounts, and other property owned by or in the possession of the Receivership Defendants. The Receiver shall have the discretion to determine the time and manner of this access.

**IT IS FURTHER ORDERED** that if, at the time of service of this Order, any records or property relating to any Defendant's business or assets are located in the personal residence of any individual Defendant, and such records or property have not already been produced to the Commission pursuant to the TRO, then such individual Defendant shall, within forty-eight (48) hours of service of this Order, produce to the Commission, at a location designated by the Commission:

A.     All contracts, accounting data, written or electronic correspondence, advertisements, computer tapes, discs, or other computerized or electronic records, books, written or printed records, handwritten notes, telephone logs, telephone scripts, telephone bills, receipt books, membership records and lists, refund records, receipts, ledgers, bank records (including personal and business monthly statements, canceled checks, records of wire transfers, and check registers), appointment books, copies of federal, state, and local business or personal income or property tax returns, 1099 forms, title records, and other documents or records of any kind that relate to any Defendant's business and assets; and

B.    All computers and data in whatever form, used by Defendants, in whole or in part, relating to any Defendant's business and assets, along with any passwords or other codes necessary for accessing such computers or data.

## XXI.

## CONSUMER REPORTS

**IT IS FURTHER ORDERED** that the Commission may obtain consumer reports concerning any Defendant pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to the Commission.

**IT IS FURTHER ORDERED** that the Commission may provide to the Receiver copies of any consumer reports it receives pursuant to this provision.

## XXII.

## DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each affiliate, subsidiary, division, sales entity, successor, assign, officer, director, employee, independent contractor, distributor, agent, attorney, ad broker, advertising agency, fulfillment house, call center, domain registrar, mail receipt facility, and representative of any Defendant, and, within ten (10) calendar days following service of this Order on Defendants, Defendants shall provide the Commission with an affidavit identifying the names, titles, addresses, and telephone numbers of the persons and entities that Defendants have served with a copy of this Order in compliance with this provision. The Receiver has no obligation under this provision.

## XXIII.

## SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served by facsimile transmission, email, personal or overnight delivery, or U.S. Mail, upon any financial or brokerage institution, entity, or person that may have possession, custody, or control of any documents or assets of any Defendant, or that may be subject to any

provision of this Order.

## XXIV.

## CORRESPONDENCE WITH AND NOTICE TO PLAINTIFF

**IT IS FURTHER ORDERED** that**,** with regard to any correspondence, pleadings, or notifications related to this Order, except as specified above, service on the Commission shall be performed by personal or overnight delivery, by facsimile, by e-mail, or in accordance with the Court's ECF procedures to:

> THOMAS DAHDOUH
> Federal Trade Commission
> 901 Market Street, Suite 570
> San Francisco, CA  94103
> Phone (415) 848-5100/Fax (415) 848-5184
> email: tdahdouh@ftc.gov

## XXV.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

IT IS SO ORDERED:


DATED: _____  _____
                                    UNITED STATES DISTRICT JUDGE